

FILED
OCT - 5 2006
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY ___ Deputy Clerk

ENTERED
OCT - 6 2006
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY ___ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>LORBER INDUSTRIES OF CALIFORNIA<br><br>Debtor. | Case No. LA 06-10399 TD<br><br>Chapter 11<br><br>MEMORANDUM OF DECISION |

The objection of the California Self-Insurers' Security Fund (Fund) to Debtor's plan confirmation was heard before me on August 29, 2006. Mr. Louis Cisz of Thelen Reid & Priest appeared for the Fund and Mr. David Poitras of Jeffer, Mangels, Butler & Marmaro appeared for the Debtor, Lorber Industries of California. Upon consideration of the evidence and the briefs and argument of counsel, the following are my findings of fact and conclusions of law.

## INTRODUCTION

The state legislature of California has created a "complete system of workers' compensation." California Labor Code section 3201.[1] Under this system employers

---

[1] All section references herein are to the California Labor

are strictly liable for their employees' workers' compensation claims, as set forth in the statute. Section 3600. To ensure that injured workers actually receive compensation, the California statute requires employers to either purchase workers' compensation insurance from private insurance agencies or to self-insure, subject to a certificate of consent from the California Director of Industrial Relations (Director). Section 3700 (a) & (b).

After obtaining the Director's approval to self-insure, employers must then provide a security deposit and participate in the California Self-Insurers' Security Fund (Fund). Section 3742. If a self-insured employer fails to make workers' compensation payments, the Director may order the Fund to pay the employer's obligations. Section 3701.5. If the Director orders the Fund to pay, then the Fund "shall have the right and obligation to obtain reimbursement from an insolvent self-insurer" for the payments that the Fund has made on the employer's behalf. Section 3744(a).

The Debtor here, commencing in 1992, used the self-insurance option to provide for its employees' workers' compensation claims. The Debtor filed its chapter 11 petition this year and later defaulted on its workers' compensation obligations. On April 28, 2006, pursuant to sections 3743 and 3701.5, the Director ordered the Fund to assume the Debtor's obligations for workers' compensation. The Fund has filed a Proof of Claim for an unknown amount seeking reimbursement for the obligations that it assumed on the Debtor's behalf. The Fund believes that this claim is entitled to priority under 11 U.S.C. § 507(a)(8)(E)(ii). The Debtor asserts that the Fund's claim should be treated as a general unsecured claim not entitled to priority.

## DISCUSSION

Under 11 U.S.C. § 507(a)(8)(E)(ii) "an excise tax on . . . a transaction occurring

Code unless specifically otherwise indicated.

during the three years immediately preceding the date of the filing of the petition" is entitled to priority status. Two issues exist in this case: (1) Can the Fund's claim be considered an excise tax? and (2) Did the relevant transaction here occur during the three years immediately preceding the Debtor's petition date?

The Supreme Court has made it clear that state law labels are not binding in determining whether an obligation is a tax. New York v. Feiring, 313 U.S. 283, 285 (1941). Thus, federal courts have applied a "functional examination" to determine if a debt is a tax. See, U.S. v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213 (1996). The Supreme Court has defined the term "tax" as a "pecuniary burden laid upon individuals or property for the purpose of supporting the Government." New Jersey v. Anderson, 203 U.S. 483, 492 (1906).

### The Lorber Test

In an earlier Lorber decision, the Ninth Circuit established a four-part test to determine if a debt was a tax. In re Lorber Industries of California, 675 F.2d 1062 (9th Cir. 1982). Under Lorber an obligation is a tax if it is: (1) an involuntary pecuniary burden; (2) imposed by, or under authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and (4) under the police or taxing power of the state. Id. at 1066.

Here the Fund's claim satisfies all four elements of the Lorber test. First, the Fund's claim is "an involuntary pecuniary burden." In re Camilli involved the claim of an Arizona fund that was very similar to the California Fund at issue. In re Camilli, 94 F.3d 1330 (9th Cir. 1996). In Arizona employers were required to obtain workers' compensation insurance. If they failed to make compensation payments then the Arizona fund was required to make the payments for them and seek reimbursement. In Camilli, the court found that the debtor's obligation was not a voluntary one because, in Camilli, the debtor had a "statutorily-created obligation to reimburse the

3

Special Fund once the Fund paid benefits to an uninsured employee. . . . The obligation to repay the Fund in this case is thus the product of legislative fiat; at the time it arose, and the lien was established, it was wholly beyond the control of the debtor." Id. at 1333.  Here the Fund's claim would also be considered involuntary because like the Arizona fund at issue in Camilli, section 3744(a) requires the Debtor to reimburse the Fund once the Fund has made payments on the Debtor's behalf.

The Fund's claim here also meets the second prong of the Lorber test because the obligation is imposed by the California legislature under section 3744.  Next, under the third element of Lorber, it is clear that the Fund's purpose is to benefit the public by providing for workers whose employers fail to provide them with proper workers' compensation benefits.  When the Fund was established the legislature stated that it was a "necessary component of a complete system of workers' compensation, required by . . . the California Constitution, to have adequate provisions for the comfort, health and safety, and general welfare of any and all workers and their dependents."  Section 3740.  Also, the fact that the legislature provided for a reimbursement mechanism for the Fund seems to indicate that part of the purpose of the statutory obligation is to defray "expenses of government or undertakings authorized by it."  Section 3743(a).

The fourth requirement of Lorber is met because the legislature explicitly stated that the formation of the workers' compensation system was "an expression of the police power."  Section 3201.

### George's Fifth Prong

Although the Fund's claim does meet the Lorber elements, the Ninth Circuit more recently held in In re George that under some circumstances an additional test would be required.  361 F.3d 1157, 1162 (9th Cir. 2004).  The requirement of an additional test was first hinted at in Camilli when the court distinguished the Arizona

workers' compensation fund from the sewer user charges that were at issue in <u>Lorber</u>. <u>Camilli</u>, at 1333. The <u>Camilli</u> court stated that in <u>Lorber</u>, it "did not have occasion to consider whether the elements we discussed in that case would, in all circumstances, be sufficient to qualify an obligation as a tax." <u>Camilli</u>, at 1333. The Ninth Circuit then looked at an additional test that was used by the Sixth Circuit in <u>Suburban I</u> and <u>Suburban II</u>. <u>Id</u>. In those cases the Sixth Circuit was concerned that if courts only relied on the <u>Lorber</u> elements to determine if a debt was a tax then there would be too many instances in which government claims were receiving priority over the claims of private creditors. <u>In re Suburban Motor Freight</u>, 998 F.2d 338, 341 (6th Cir. 1993). Thus the Sixth Circuit developed two additional requirements in order to refine the third, public purpose element of <u>Lorber</u>: (1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government claim not disadvantage private creditors with like claims. <u>In re Suburban Motor Freight</u>, 36 F.3d 484, 488 (6th Cir. 1994).

In <u>Camilli</u>, the Ninth Circuit found that the Arizona fund's claim met the additional requirements of the <u>Suburban</u> cases. <u>Camilli</u>, at 1334. The fund's claim in <u>Camilli</u> was distinguishable because (1) the fund in issue there was "not a state monopoly, so that premium obligations to the state would not be accorded tax priority as a universal obligation of all insured employers" and (2) the Arizona fund carried "its statutorily-imposed burden alone" because "no private entity competes with the [Arizona fund] to pay 'insurance' claims for which no insurance has been bought." <u>Id</u>. Because the fund's claim in <u>Camilli</u> met the requirements of both <u>Lorber</u> and the <u>Suburban</u> cases, the Ninth Circuit declined to decide whether the <u>Suburban</u> elements needed to be satisfied in all cases. <u>Id</u>.

However, in 2004, when the Ninth Circuit decided <u>In re George</u>, the court applied both the <u>Lorber</u> test and the additional requirement from <u>Suburban</u> that

5

according priority treatment to the government claim not disadvantage private creditors with like claims. In re George, at 1162. In George the employer failed to obtain workers' compensation insurance as required by California law. As a result, the California Uninsured Employers Fund (CUEF) made the employer's workers' compensation payments for the employer and CUEF sought reimbursement. The Ninth Circuit held that the CUEF was distinguishable from the fund in Camilli for two reasons. First, the court found that in California reimbursement claims for uninsured employers are treated as claims for liquidated damages. Id. The court said that this suggested that the "appropriate comparison is to other claimants holding an entitlement to liquidated damages, some of whom could be non-governmental entities." Id. However, the court noted that the fact that the state of California labeled these claims as "liquidated damages" was merely persuasive and not controlling but that it did tend to "demonstrate the relative importance each state places on being reimbursed." Id.

Second, the court distinguished the California reimbursement claim from Camilli because the employer there was uninsured and under California law governing uninsured employers, it was possible that another "employer could have a competing claim against the uninsured employer [whose obligations were at issue before the court] if the worker has suffered a cumulative injury." Id. However, the court noted, under the Arizona state scheme in Camilli "only the last employer in whose employment the injured worker was injuriously exposed has liability." Id. Because a "hypothetical creditor" could be imagined under the California scheme and the claim itself was labeled as one for "liquidated damages" under California law, the court in George decided that the government's claim could not be considered a tax even though the claim otherwise met the Lorber requirements. Id. at 1162-1163.

In George, the court relied on section 3717(a) of the California Labor Code to

6

find that the legislature had labeled the fund's claim to be one for liquidated damages. However, that section is not applicable to the Fund's claim here because section 3717(a) only refers to claims by the Uninsured Employers Fund and does not apply to the Self-Insurers' Fund. Id. The George court found that the "liquidated damages" claim would seem to indicate that an "appropriate comparison is to other claimants holding an entitlement to liquidated damages, some of whom could be non-governmental entities", even though it concluded for reasons discussed, that the label itself is not controlling. In re George, at 1162.

The more important question here would seem to be whether or not a hypothetical creditor can be imagined that would be subordinated if the government's claim was given priority. In George the court found that such a creditor existed because under section 3716(b) of the California Labor Code dealing with the fund for uninsured employers, if the fund made payments to the injured employee on behalf of the uninsured employer, the fund had "no liability for claims of . . . cumulative injury." Thus, under section 5500.5 it was possible that a previous employer could be held liable for the workers' compensation benefits that the uninsured employer failed to pay and thus seek reimbursement which would create a competing claim.

However, the Fund's claim here is distinguishable because the Debtor was self-insured, not uninsured. Whereas the California Uninsured Employers' Fund legislation creates an exception for cumulative injuries under sections 3716(b) and 5500.5, the legislation affecting the California Self-Insurers' Security Fund specifies that the Fund "shall assume the workers' compensation obligations of an insolvent self-insurer." Section 3743(a). There is no exclusion for "claims of . . . cumulative injury." Thus, because the Fund here is fully assuming responsibility for compensating the employee, there would seem to be no hypothetical situation in which a previous employer could be held liable for benefits that a subsequent, uninsured, employer

failed to make because the Fund would have already assumed payment of the benefits. Thus, under the facts before me, the Fund seems to satisfy the additional requirements for priority as imposed by George.

Because the Fund's claim passes both the Lorber test and the additional test required in George, this claim can be classified as an excise tax under 11 U.S.C. § 507(a)(8)(E)(ii).

### Relevant "Transaction"

The final question before this court is what would be considered the relevant "transaction" under 11 U.S.C. § 507(a)(8)(E)(ii). To answer this question courts look at the date on which the particular tax was assessed. Franchise Tax Board v. Bracey, 77 F.3d 294 (9th Cir. 1996). To determine the date of assessment courts look at the language of the applicable state taxing scheme. Id. The current case presents more of a challenge because an assessment date is not specified within the California Labor Code for tax purposes.

In George, the court determined the date of the relevant transaction by pinpointing the event that triggered the California Uninsured Employers' Fund's claim. In re George, at 1163. The court concluded that under California law neither hiring the employee who became injured nor the injury itself triggered a CUEF claim. Instead the court determined that it was the "failure to make the transaction of purchasing workers' compensation insurance" that caused CUEF's liability. Id. The court determined that an "absence of a transaction" failed to meet the § 507(a)(8)(E)(ii) requirement of "a transaction occurring during" the three years preceding bankruptcy. Id.

In the current case the Fund did not start making payments until the Debtor defaulted on its workers' compensation obligations and the Director ordered the Fund to assume Debtor's obligations. However, the Ninth Circuit in George adopted the

view that the relevant transaction occurred when the CUEF became potentially liable. Specifically, George stated: "What occasions such a claim is the failure to make the transaction of purchasing workers' compensation insurance (or applying for self-insurance status)." Id. (Latter emphasis supplied.) In other words, what George said as it relates to the motion now before me, albeit in dicta, was that the "relevant transaction" occurred when the debtor failed to obtain insurance, or [for our purpose here] when the Debtor obtained the Director's approval to self insure, not when the employee was injured and the Fund had to pay. Thus, under the logic of George, it seems that the relevant transaction in this case would be when the Debtor applied for and was granted self-insured status. Because this occurred in 1992, the Fund's claim would not fall within the "three years immediately preceding the date of the filing of the petition."

## CONCLUSION

The Objection to the Plan Confirmation is overruled because the relevant transaction under 11 U.S.C. §507(a)(8)(E)(ii) did not occur during the three years immediately preceding the date of the filing of the petition. The Fund is entitled only to a general unsecured claim.

IT IS SO ORDERED.

Dated: 10/5/06

THOMAS B. DONOVAN
United States Bankruptcy Judge

9

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1. You are hereby notified that a judgment or order entitled:

**MEMORANDUM OF DECISION**

was entered on 10/6/06.

2. I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on 10/6/06.

Phil Strok, Esq.
Weiland Golden Smiley
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

David M. Poitras
Jeffer Mangels Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Louis Cisz
Thelen Reid & Priest LLP
101 Second Street, Suite 1800
San Francisco, CA 94105

Alan Martin
Sheppard Mullin Richter & Hampton
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626

Office of the U.S. Trustee
Patricia Beary
Ernst & Young Plaza
725 S. Figueroa St., 26th Flr
Los, Angeles, CA 90017

Dated: 10/6/06

_____
Clerk